

**SO ORDERED.**

**SIGNED this 23rd day of August, 2024.**



LENA MANSORI JAMES
UNITED STATES BANKRUPTCY JUDGE

---

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF NORTH CAROLINA
## DURHAM DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| Esther Chinyere Okeiyi, | ) | Case No. 23-80171 |
| | ) | |
|     Debtor. | ) | |
| ——————————————— | ) | |
| | ) | |
| Anoruo Asilonu, | ) | Adv. Pro. No. 24-09001 |
| | ) | |
|     Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Esther Chinyere Okeiyi, | ) | |
| | ) | |
|     Defendant. | ) | |
| ——————————————— | ) | |

### Order Granting Defendant's Motion to Dismiss

This adversary proceeding is before the Court on the motion to dismiss filed by Esther Chinyere Okeiyi (the "Defendant") under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012, for failure to state a claim upon which relief can be granted. (Docket No. 16). For the reasons stated below, the Court finds that the Defendant's motion should be granted.

JURISDICTION

This Court has jurisdiction over this adversary proceeding under 28 U.S.C.
§ 1334. Under 28 U.S.C. § 157(a) and Local Civil Rule 83.11, the United States
District Court for the Middle District of North Carolina has referred this proceeding
to this Court. The claims in this proceeding are core proceedings under 28 U.S.C.
§ 157(b)(2)(I). Additionally, the Plaintiff and the Defendant have expressly
consented to bankruptcy court adjudication of the claims asserted in this adversary
proceeding. (Docket Nos. 17, 18). *See Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S.
665, 674-82 (2015). Therefore, this Court is statutorily and constitutionally
authorized to enter a final judgment on all claims in this proceeding.

APPLICABLE LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal of a
complaint if it "fail[s] to state a claim upon which relief can be granted."  Fed. R.
Civ. P. 12(b)(6). In evaluating a motion to dismiss, a court must "test the sufficiency
of a complaint" to see if it alleges a claim for which relief can be granted. *Burgess v.
Goldstein*, 997 F.3d 541, 562 (4th Cir. 2021) (quoting *Edwards v. City of Goldsboro*,
178 F.3d 231, 243-44 (4th Cir. 1999)). A motion under Rule 12(b)(6) should be
granted if the complaint does not allege "enough facts to state a claim to relief that
is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
Accordingly, the "[f]actual allegations must be enough to raise a right to relief above
the speculative level" and advance the plaintiff's claim "across the line from
conceivable to plausible." *Id.* at 555, 570. As explained in *Ashcroft v. Iqbal,*

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

To determine plausibility, all well-pleaded facts set forth in the complaint are taken as true and viewed in a light most favorable to the plaintiff; however, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement" will not constitute well-pleaded facts necessary to withstand a motion to dismiss. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009); *see also Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion to dismiss, the Court "evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011); *see also Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citing Fed. R. Civ. P. 10(c)). As with the complaint itself, the Court construes the facts in attached exhibits in a light most favorable to the Plaintiff. *Jeffrey M. Brown Assocs., Inc. v. Rockville Ctr., Inc.*, 7 F. App'x 197,

202 (4th Cir. 2001) (citing Fed. R. Civ. P. 10(c)). The Court also takes judicial notice

of pertinent docket entries and papers within this adversary proceeding and the

underlying bankruptcy case. *See Anderson v. FDIC*, 918 F.2d 1139, 1141 n.1 (4th

Cir. 1990) (holding that a bankruptcy court may "properly take judicial notice of its

own records"); *see also Brown v. Ocwen Loan Servicing, LLC*, No. 14-3454, 2015 WL

5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 F. App'x 200 (4th Cir. 2016)

(taking judicial notice of docket entries in other cases for purposes of evaluating a

Rule 12(b)(6) motion to dismiss).

FACTUAL BACKGROUND

The following facts are alleged in the complaint and accepted as true for

purposes of deciding this motion:

- Sometime prior to November 2015, the Plaintiff, residing in Nigeria, became engaged to marry the Defendant's daughter, Blessing Okeiyi, a United States citizen. (Docket No. 1, ¶¶ 34, 40). Subsequently, Okeiyi prepared and filed with the United States Citizenship and Immigration Service ("USCIS") a Petition for Alien Fiancé, thus initiating the legal process of serving as the Plaintiff's immigration petitioner, with the end goal to secure residency status for the Plaintiff. (Docket No. 1, ¶¶ 35-36).

- USCIS approved the Petition for Alien Fiancé, and after the Plaintiff applied for and received a "K-1" visa, the Plaintiff entered the United States in December 2015. (Docket No. 1, ¶¶ 38-41). The Plaintiff and Okeiyi were married on January 8, 2016. (Docket No. 1, ¶ 43).

- In April 2016, the Plaintiff signed an application for permanent residency, (Docket No. 1, ¶ 51), and Okeiyi executed an affidavit of support. (Docket No. 1, ¶ 46). Because Okeiyi did not meet the legal requirements to serve as the Plaintiff's sole affidavit of support financial sponsor, (Docket No. 1, ¶ 47), the Defendant executed an affidavit of support as a joint sponsor. (Docket No. 1, ¶¶ 48, 50). These three documents were filed with USCIS in May 2016. (Docket No. 1, ¶¶ 52-53).

- On September 22, 2016, the USCIS approved the Plaintiff's application for permanent residency, and the Plaintiff gained status as a resident. (Docket No. 1, ¶¶ 58, 60). But for the spousal and joint sponsor affidavits of support, the Plaintiff's application could not have been granted. (Docket No. 1, ¶¶ 61-62).

- The affidavits are legally binding contracts between the sponsor and the United States Government, which may be enforced by the immigrant beneficiary. (Docket No. 1 ¶¶ 17, 20, Ex. 1). The sponsors' obligations to provide support at 125 percent of the Federal Poverty Guidelines commenced when the Plaintiff became a permanent resident and conclude upon a terminating event as defined in the affidavit. (Docket No. 1, ¶¶ 21-23, Ex. 1). Separation and divorce are not terminating events under the affidavit. (Docket No. 1, Ex. 1).

- In November 2016, the Plaintiff and Okeiyi separated. (Docket No. 1, ¶ 63). For the three years following the separation, the Plaintiff pursued a graduate degree. (Docket No. 1, ¶ 64). From 2017 through 2019, the Plaintiff's income was below 125 percent of the federal poverty guidelines. (Docket No. 1, ¶¶ 64, 66). During this time, the Defendant did not provide any financial support to the Plaintiff. (Docket No. 1, ¶ 67).

- In November 2018, the Plaintiff, through counsel, requested that the Defendant comply with her obligation under the affidavit of support and calculated that the Defendant owed the Plaintiff $5,144 for support obligations. (Docket No. 1, ¶ 68). In November 2019, the Plaintiff filed a complaint against both the Defendant and Okeiyi in the United States District Court for the Middle District of North Carolina to enforce the affidavits of support. (Docket No. 1, ¶¶ 69, 72). The Plaintiff later voluntarily dismissed Okeiyi from the civil lawsuit. (Docket No. 1, ¶ 72).

- The Defendant, while defending the Plaintiff's claim to financial support, retained the services of another daughter, Mary Okeiyi, and invested at least $100,000 in legal fees. (Docket No. 1, ¶ 70). The District Court lawsuit proceeded to a jury trial, and with her daughter at the helm, the Defendant rebuffed all attempts to settle until minutes before the jury returned a verdict in the Plaintiff's favor. (Docket No. 1, ¶¶ 71, 73).

- In line with the jury verdict, (Docket No. 1, ¶¶ 73-74), the District Court entered a judgment against the Defendant in May 2023 in the amount of $45,862.50 (the "Judgment," Docket No. 1, Ex. 5).

On October 10, 2023, the Defendant filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. (Case No. 23-80171, Docket No. 1). The Defendant listed among her schedules a nonpriority, unsecured debt owed to the Plaintiff in the amount of $45,862.50 indicating it was disputed and a "judgment (on appeal)." (Case No. 23-80171, Docket No. 1). The Plaintiff then filed this adversary proceeding on January 12, 2024, seeking to determine the dischargeability of the debt, asserting claims under 11 U.S.C. § 523(a)(5), (a)(6) and (a)(15). (Docket No. 1). The Defendant filed a combined answer and motion to dismiss, followed by a memorandum in support of motion to dismiss as allowed by the Court's scheduling order. (Docket Nos. 16, 24). The Plaintiff timely filed a brief in opposition to the motion. (Docket No. 25). The Court took the matter under advisement without hearing or oral argument in accordance with Local Rule 7007-1(d).

DISCUSSION

1.   Domestic Support Obligation Under 11 U.S.C. § 523(a)(5) or
Other Debt Owed to Spouse, Former Spouse or Child Under 11 U.S.C. § 523(a)(15)

The Complaint alleges that the Defendant's obligation under the affidavit of support "is in the nature of a debt owed by a former spouse or other party," thereby satisfying the definition for "domestic support obligation" under 11 U.S.C. § 101(14A) and rendering the debt nondischargeable under § 523(a)(5). Alternatively, the Complaint asserts that the Defendant's debt to the Plaintiff "is another form of marital debt" falling under the exception to discharge described in

6

§ 523(a)(15). (Docket No. 1, ¶¶ 81-84, 86). Both claims, however, fail to satisfy the limiting phrasing in those subsections that restricts the nondischargeable debts to certain specified recipients.

After being restructured through BAPCPA in 2005,[1] subsection (a)(5) now succinctly states that a debt "for a domestic support obligation" is nondischargeable. What constitutes a "domestic support obligation" is set forth in § 101(14A), which defines it, in relevant part, as "a debt … owed to or recoverable by (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative or (ii) a governmental unit." 11 U.S.C. § 101(14A)(A).[2] Subsection (a)(15) renders nondischargeable any debt,

> to a spouse, former spouse, or child of the debtor and not of the kind
> described in [§ 523(a)(5) that is incurred by the debtor in the course

---

[1] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109-8, 119 Stat. 23 ("BAPCPA").

[2] The full definition states:

> The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—
>> (A) owed to or recoverable by—
>>> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>>> (ii) a governmental unit;
>> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
>>> (i) a separation agreement, divorce decree, or property settlement agreement;
>>> (ii) an order of a court of record; or
>>> (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
>> (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A).

> of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a government unit …

11 U.S.C. § 523(a)(15). Both § 523(a)(5) and § 523(a)(15) contain nearly identical limiting phrases, which on their face restrict the respective exceptions to discharge to those listed parties (collectively, the "Enumerated Payees").

Many courts decline to strictly apply the limiting phrasing regarding Enumerated Payees, instead focusing on the "nature" of the underlying debt as determining the applicability of the statute. The Fourth Circuit Court of Appeals has clarified in an unpublished opinion that "the identity of the payee … is not determinative of whether the debt is dischargeable," but rather "whether the award of fees was in the nature of support[.]" *In re Bishop*, 149 F.3d 1167, 1167 (4th Cir. 1998) (unpublished). As a result, courts in this circuit have found fees owed to a former spouse's attorney, a child's guardian ad litem, or even a mortgage creditor to be excepted from discharge under § 523(a)(5) or (15). *See id.*; *Silansky v. Brodsky, Greenblatt & Renehan (In re Silansky)*, 897 F.2d 743, 744 (4th Cir. 1990) (per curiam); *In re Johnson*, 397 B.R. 289, 296 (Bankr. M.D.N.C. 2008).[3] But even in

---

[3] This interpretation of the Enumerated Payees extends well beyond the Fourth Circuit. *E.g.*, *Stewart v. Walker (In re Stewart)*, 190 F. App'x 147, 149-50 (3d Cir. 2006) (excepting guardian ad litem fees incurred in contested adoption); *Falk & Siemer, LLP v. Maddigan (In re Maddigan)*, 312 F.3d 589, 597 (2d Cir. 2002) (excepting fees of counsel who represented mother of debtor's child in custody dispute); *Beaupied v. Chang (In re Chang)*, 163 F.3d 1138, 1141-42 (9th Cir. 1998) (excepting guardian ad litem fees); *Holliday v. Kline (In re Kline)*, 65 F.3d 749, 751 (8th Cir. 1995) (excepting debtor's former wife's attorney fees); *Miller v. Gentry (In re Miller)*, 55 F.3d 1487, 1488 (10th Cir. 1995) (excepting guardian ad litem and child psychologist fees); *Dvorak v. Carlson (In re Dvorak)*, 986 F.2d 940, 941 (5th Cir. 1993) (excepting debtor's former husband's attorney fees and daughter's guardian ad litem fees).

cases where the debt was not directly payable or owed to the spouse, former spouse, or child of the debtor, the goods, services or other benefits comprising that debt still *flowed to* one of the Enumerated Payees. *See In re Bishop*, 149 F.3d at 1167 (finding attorney ad-litem fees to be support for the debtor's child and nondischargeable); *In re Silansky*, 897 F.2d at 744 (finding fees owed to divorce attorney benefitted former spouse and was nondischargeable); *In re Johnson*, 397 B.R. at 296 (finding obligation to pay mortgage debt for residence of former spouse nondischargeable). In other words, § 523(a)(5) and (15) may be applicable to debts that, regardless of the identity of the immediate recipient, are in the nature of support and intended to benefit an Enumerated Payee.

The Plaintiff, as he concedes, is not the spouse, former spouse, or child of the Defendant. Nor is he the parent, guardian, or responsible relative for the Defendant's child or a governmental unit. As the former son-in-law of the Defendant,[4] the Plaintiff would not fit as a spouse, former spouse, or child of the Defendant; nor would he fit even within the more expansive view of Enumerated Payees embraced by courts in the Fourth Circuit because the benefits from the affidavit of support do not flow, directly or otherwise, to one of those payees. Because the Plaintiff is not an Enumerated Payee, the debt owed to him is dischargeable even if it is in the nature of support. *See* 4 COLLIER ON BANKRUPTCY ¶ 523.11(4) (16th ed. 2024) (noting that language of statute dictates that if the debt is

---

[4] Although obliquely stated in the Complaint, (Docket No. 1, p. 2 and ¶¶ 81, 87) (describing Okeiyi as the Plaintiff's "former spouse" and Defendant as his "former mother-in-law"), both parties confirm in their briefing that the Plaintiff and Okeiyi are divorced. (Docket No. 24, p. 2; Docket No. 25, p. 18).

not owed to one of the listed parties, it is dischargeable "even though it is in the nature of support").

This finding is in keeping with the limits imposed on the scope of Enumerated Payees by other jurisdictions, particularly in the case of a debtor's former in-laws. Several courts have considered and rejected the Plaintiff's argument that a debtor's former in-law can be considered an Enumerated Payee. In *Tucker v. Oliver*, 423 B.R. 378, 379, 381 (W.D. Okla. 2010), the district court affirmed the finding that attorney's fees owed to the debtors' former daughter-in-law were dischargeable because the plaintiff could not be considered an Enumerated Payee. In doing so, the court rejected the plaintiff's "in loco parentis" argument that, because the debtors were asserting rights in state court "which were akin to those of a parent, they should be viewed as parents for purposes of § 101(14A)," noting that the "proposed application of the statute" was "inconsistent with its plain meaning." *Id.* at 379. In *In re Putnam*, No. 10-19719-A-7, 2011 WL 10653863, at *3 (Bankr. E.D. Cal. Feb. 9, 2011), the Bankruptcy Court for the Eastern District of California dismissed a complaint for nondischargeability under § 523(a)(5) and (a)(15) filed by the debtor's former father-in-law, finding the plaintiff lacked standing to pursue such a claim because the outstanding loan obligation was not a debt owed to a spouse, former spouse, or child of the debtor. The Bankruptcy Courts for the Eastern District of New York and the District of Connecticut similarly held that a debtor's former in-laws lacked standing to assert that a debt is nondischargeable because the debt was not owed to a spouse, former spouse, or child of the debtor. *See*

*In re Martelloni*, No. 12-75072-AST, 2013 WL 5873264, at *5 (Bankr. E.D.N.Y. Oct. 31, 2013)*; In re Rogers*, No. 08-30864 (LMW), 2010 WL 1571196, at *8 (Bankr. D. Conn. Apr. 19, 2010). The weight of available authority, therefore, indicates that the Plaintiff—as the Debtor's former son-in-law—is not an Enumerated Payee and thus lacks standing to pursue a nondischargeability complaint under § 523(a)(5) or (15).

The Court observes that there may be a basis for finding the debt owed to the Plaintiff by Okeiyi, his former spouse, is nondischargeable under § 523(a). *See, e.g.*, *Hrachova v. Cook (In re Cook)*, 473 B.R. 468, 472-73 (Bankr. M.D. Fla. 2012) (finding debt owed to debtor's former spouse stemming from affidavit of support to be nondischargeable domestic support obligation under § 523(a)(5)); *Araujo v. Ortiz (In re Ortiz)*, No. 6:11-bk-07092-KSJ, 2012 WL 5556935, at *2-3 (Bankr. M.D. Fla. Oct. 31, 2012) (same); 1 COLLIER FAMILY LAW AND THE BANKRUPTCY Code ¶ 6.03 (2024) (citing *Hrachova* and *Ortiz* in stating that "[t]he language regarding courts orders may also render nondischargeable a debtor's obligations under an affidavit of support"). But the Plaintiff asks this Court to extend the holdings of *Hrachova* and *Ortiz,* to find the debt owed by his ex-mother-in-law—not his former spouse—to be nondischargeable.

The Plaintiff maintains that such an extension is warranted because the Defendant's obligation under the affidavit of support "is joint and several with respect to the obligation of the former spouse." (Docket No. 25, p. 13). The Plaintiff essentially relies on the "joint and several" nature of the original underlying obligation as a means to impute the requisite status of "former spouse" to the

Defendant. The Court finds the Plaintiff's overly expansive reading of (a)(5) and (15) thoroughly unsupported by the language of § 523(a) or any decisional authority and runs contrary to "the long-standing principle that exceptions to discharge 'should be confined to those plainly expressed.'" *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 275 (2013) (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998)); *see also TKC Aero. Inc. v. Muhs (In re Muhs)*, 923 F.3d 377, 384 (4th Cir. 2019) (noting "exceptions to discharge are narrowly construed").

The Court is not aware of any cases extending the coverage of § 523(a)(5) and (15) based on the Plaintiff's theory of joint and several liability and, in fact, at least one court has rejected a similar argument. In *Bendetti v. Gunness (In re Gunness)*, 505 B.R. 1, 5-6 (B.A.P. 9th Cir. 2014), the BAP considered whether a debt the debtor owed to both her husband's former spouse and the former spouse's family law attorney was dischargeable under § 523(a)(5) or (15). Prepetition, the debtor in *Gunness* was joined as a party with her husband in state court dissolution and fraudulent transfer proceedings, which resulted in a court order providing that the debtor was jointly and severally liable for the debt for attorney fees. *Id.* at 2. The BAP rejected the assertion that joinder of the debtor in the state court case and her joint and several liability on the debt created or imputed "a new familial relationship where none previously existed … between two unrelated parties." *Id.* at 7. The BAP found that the former spouse of the debtor's husband did not fit within even an expansive view of Enumerated Payees listed under § 523(a)(5) and (15), remarking that "[w]e are not aware of any cases extending the coverage of these

nondischargeability provisions as far as [the plaintiffs] have asked us to, nor have they cited us to any such cases." *Id.* at 7. The court declined to further expand the exceptions and affirmed summary judgment in favor of the debtor.

The Plaintiff's attempt to redefine the debt owed by his former mother-in-law as an imputed domestic support obligation by way of joint and several liability is effectively a red herring. Putting aside the fact that the Plaintiff's former spouse was dismissed from the underlying proceeding,[5] joint and several liability would have no bearing on the identity of the obligee in § 523(a)(5) and (15). There are numerous requirements specified within each of the debts excepted from discharge in § 523(a), but those requirements generally speak to and affect the exceptions in three respects: (1) the nature of the debt owed, (2) the culpability or responsibility of the debtor for that debt, and (3) the entity to whom the debt must be owed. Depending on the circumstances, joint and several liability may be applicable to the first two categories, but it carries little to no weight in the determining whether the recipient or obligee of a debt falls under a discharge exception. That is because, regardless of whether an individual is jointly and severally liable with another party for a given debt, that liability does not alter the *identity of the party to whom the debtor owes that debt*.

The Plaintiff's cited examples of joint and several liability in the context of nondischargeability are simply inapposite. He first points the Court to the joint and

---

[5] Although an affidavit of support imposes joint and several liability on a joint and primary sponsor, *see* 8 C.F.R. § 213a.1, here, the Judgment is only as to the Defendant and not the Plaintiff's former spouse, who was voluntarily dismissed from the proceeding.

several liability imposed on married couples for tax obligations. (Docket No. 25, p. 14) (citing 26 U.S.C. § 6013(d)(3)). The Plaintiff is correct that joint liability for prepetition tax debts can be deemed nondischargeable under § 523(a)(1) despite a debtor's individual responsibility for the taxes at issue. *See Carlin v. United States (In re Carlin)*, 328 B.R. 221, 225-26 (B.A.P. 10th Cir. 2005). Critically, however, the only influence of joint and several liability in that instance is on the debtor's individual responsibility for the debt. *Id.* (finding debt was nondischargeable despite the fact that debtor had no income herself and was not required individually to file an income tax return). Joint and several liability has no similar impact on the identity of the obligee; § 523(a)(1) requires only that the debt be owed to a taxing or customs enforcement entity and, unlike § 523(a)(5) or (15), does not require a specific familial relationship. In the case of taxes stemming from a joint refund, the taxpayers are jointly obligated to the same taxing entity. The Plaintiff also cites to § 523(a)(2)(A), which bars discharge of "any debt … for money … to the extent obtained by … false pretenses, a false representation, or actual fraud." Again, in that example, joint and several liability touches on the question of a debtor's responsibility for the debt, allowing a court to find a debt nondischargeable regardless of the debtor's personal culpability because § 523(a)(2)(A) specifies only that "the debt must result from someone's fraud," but is "agnostic about who committed it." *Bartenwerfer v. Buckley*, 598 U.S. 69, 76 (2023). As with nondischargeable prepetition taxes, joint and several liability has no bearing on the identity of the recipient or obligee of the debt in § 523(a)(2)(A).

Unlike many of the exceptions listed under § 523(a), subsections (a)(5) and (15) limit and define the recipient or obligee of the debts that will be deemed nondischargeable. Although at least one court has found debts stemming from an affidavit of support to be excepted from discharge under § 523(a)(5), *see Hrachova*, 473 B.R. at 472-73 and *Ortiz*, 2012 WL 5556935, at *2-3, the debts at issue in each of those cases were owed to the debtor's former spouse. The Plaintiff asks this Court "to go one bridge further than the Middle District of Florida in *Hrachova* and *Ortiz*," by finding the debt owed to him by his former mother-in-law to be similarly nondischargeable. (Docket No. 25, p. 13). While the Plaintiff deems this to be "an unremarkable step," the "bridge" he asks this Court for is simply a bridge too far.

Accordingly, because he is not an Enumerated Payee under either subsection, the Court finds the Plaintiff fails to sufficiently plead a cause of action for nondischargeability under § 523(a)(5) and (15).[6]

### 2.   Willful and Malicious Under 11 U.S.C. § 523(a)(6)

Under 11 U.S.C. § 523(a)(6), a debtor may not discharge "any debt ... for willful and malicious injury by the debtor to another entity or to the property of another entity." "[N]ondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Geiger*, 523 U.S. at 61. Therefore, to find a willful and malicious injury, the debtor must act intentionally and engage in the conduct with an "intent to injure." *In re Muhs*, 923 F.3d at 379

---

[6] Because the Court finds the Plaintiff is not an Enumerated Payee, it makes no findings as to whether a debt from an affidavit of support can and would constitute a "domestic support" obligation under § 523(a)(5) or other marital debt under § 523(a)(15).

(quoting *In re Duncan*, 448 F.3d 725, 730 (4th Cir. 2006)); *Geiger*, 523 U.S. at 61. An "[i]njury that is caused by reckless or negligent conduct does not fall under the scope of § 523(a)(6)." *In re Hunter*, 610 B.R. 479, 508 (Bankr. M.D.N.C. 2019) (citing *Geiger*, 523 U.S. at 64 and *In re Muhs*, 923 F.3d at 386). The Fourth Circuit has characterized the test for willful and malicious injury as "whether the debtor acted with 'substantial certainty [that] harm [would result] or a subjective motive to cause harm.'" *Parsons v. Parks (In re Parks)*, 91 F. App'x 817, 819 (4th Cir. 2003) (quoting *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 603 (5th Cir. 1998)). Determining whether a debtor willfully and maliciously caused injury "demands an analysis focused on the debtor's mental state as it relates to the consequences of an injurious act." *LeCann v. Cobham (In re Cobham)*, 551 B.R. 181, 192 (E.D.N.C. 2016), *aff'd on other grounds,* 669 F. App'x 171 (4th Cir. 2016).

Without more, a simple breach of contract that leads to injury, even if that breach is deliberate, does not fall within the bounds of willful and malicious injury under § 523(a)(6). *In re Muhs*, 923 F.3d at 386, 389; *see also Geiger*, 523 U.S. at 61-62 (describing that "the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts" and a "knowing breach of contract" does not qualify). Courts in the Fourth Circuit have found that "[f]or the debt to be nondischargeable under § 523(a)(6), the breach must be accompanied by some conduct that is legally wrongful or [tortious] within the meaning of § 523(a)(6)." *In re Walker*, 416 B.R. 449, 468 (Bankr. W.D.N.C. 2009); *see also In re Eppard*, 502 B.R. 458, 464 (Bankr. W.D. Va. 2012) ("[T]o qualify as willful

16

for purposes of section 523(a)(6), the debtor must: 1) commit an intentional tort, *not* a negligent or reckless tort, and 2) the intentional tort must be conduct substantially certain to result in injury or be motivated by a desire to inflict injury."); *In re Clifford*, No. 17-19329-LSS, 2019 WL 1782555, at *6 (Bankr. D. Md. Apr. 22, 2019) ("It is well settled that mere breach of contract is insufficient to render a debt non-dischargeable under Section 523(a)(6)" unless it "involve[s] intentionally or substantially certain injury[.]").

To support his claim under § 523(a)(6), the Plaintiff alleges that the Defendant withheld payment with "knowledge that the Plaintiff would suffer injury" (Docket No. 1, ¶ 91), incurred the debt "out of actual and/or implied malice" (Docket No. 1, ¶ 93), and for the reason of "caus[ing] harm to the Plaintiff." (Docket No. 1, ¶ 94). The Plaintiff alleges that the Defendant "caused over $100,000 in legal fees to be invested in fighting the Plaintiff's claim … despite the debt being originally valued at $6,000" (Docket No. 1, ¶ 92), and that these "expenses that vastly exceed her principal debt … [f]urther evinces her motivation to harm[.]" (Docket No. 1, ¶ 95).

The Defendant argues that the Plaintiff's complaint falls short of the pleading standards required to survive a motion under Rule 12(b)(6) because (1) "knowledge" of injury is legally insufficient under § 523(a)(6), (2) the Defendant's legal defense in District Court does not speak to the breach of contractual obligations under the affidavit, and (3) the allegation of malice and acting with reasons to cause harm are legal conclusions and need not be taken as true. (Docket

No. 24, pp. 11-12). The Plaintiff responds that intent to harm is alleged, pointing to paragraph 94 of the Complaint, malice is "suggested" in the Complaint by the Defendant's aggressive and massively expensive legal strategy, and evidence and proof are for another day. (Docket No. 25, p. 20).

The Court agrees with the Defendant on all points. First, as set forth above, applicable law is clear that the Defendant's knowledge that the Plaintiff would suffer injury by breaching a contract, as alleged in the Complaint, is not sufficient for the debt to fall under the ambit of § 523(a)(6). This allegation does not meet the minimum pleading standards to state a claim under § 523(a)(6).

Second, the Plaintiff is correct that circumstantial evidence can be used to support allegations of malice, as it is the rare case where a defendant has admitted acting with malice or intent to injure. But here, the Plaintiff seeks a finding that the Judgment—for damages for the Defendant's breach of her contractual obligations under the affidavit of support in 2017, 2018, and 2019—is nondischargeable. To the extent a breach of contract judgment can be found nondischargeable under § 523(a)(6), the Complaint must make factual allegations regarding the Defendant's intent and motive as it relates to the injurious act, the breach of her obligations under the affidavit. Instead, the Complaint focuses on the Defendant's subsequent legal defense, alleging in essence that the Defendant invested a disproportionate amount into her legal defense and rebuffed settlement attempts.

As to the circumstances surrounding the injurious act, that is, the failure to make support payments, the Complaint is largely silent. According to the Complaint, the Plaintiff did not contact the Defendant regarding her breach until November 2018, almost two years after the Defendant had initially breached her obligations under the affidavit. The Complaint then simply alleges that the Plaintiff filed his District Court complaint about a year later. The Complaint does not indicate whether the Defendant ever communicated with the Plaintiff immediately prior to or during the time she failed to make payments under the affidavit or, if so, the nature of any communications. The only factual allegation in the Complaint relating to the Defendant's conduct, communications, or other surrounding circumstances from 2017 to 2019 is that she "did not provide a single penny to [the Plaintiff] during his three years of financial need[,]" (Docket No. 1, ¶ 67), which standing alone, amounts to a simple breach of contract. The Court finds that the factual allegations in the Complaint, which center on the Defendant's failure to pay after a single request from the Plaintiff followed by a vigorous legal defense, are insufficient to show beyond a speculative level that the Defendant's breach of her obligations under the affidavit of support was accompanied by legally wrongful or tortious conduct within the meaning of § 523(a)(6).

Third, the Plaintiff's bare assertions and legal conclusions of implied malice and intent to harm in paragraphs 93 and 94 of the Complaint are unsupported by well-pleaded, relevant facts. The Complaint is simply devoid of factual allegations from which the Court can plausibly infer the requisite intent and malice. The Court

19

disagrees with the Plaintiff's assertion that motive need merely be "suggested." Here, the Plaintiff's suggestion is akin to a threadbare recital of an element of the cause of action and does not meet the plausibility standard set forth in *Iqbal*. Accordingly, the Court finds that the Complaint does not state a claim under 11 U.S.C. § 523(a)(6), and the Defendant's motion to dismiss should be granted as to this claim.

CONCLUSION

For the reasons stated above, it is hereby ORDERED that the Defendant's motion to dismiss for failure to state a claim under 11 U.S.C. § 523(a)(5), (a)(6) and (a)(15) is GRANTED, and the Plaintiff's claims are DISMISSED.

**END OF DOCUMENT**

## PARTIES TO BE SERVED

Anoruo Asilonu v. Esther Chinyere Okeiyi

Adv Proc. No. 24-09001

Case No. 23-80171

John Paul Hughes Cournoyer, Bankruptcy Administrator
*via cm/ecf*

Jason L. Hendren on behalf of Defendant Esther Chinyere Okeiyi
*via cm/ecf*

Rebecca F. Redwine on behalf of Defendant Esther Chinyere Okeiy
*via cm/ecf*

Lydia C. Stoney on behalf of Defendant Esther Chinyere Okeiyi
*via cm/ecf*

Benjamin E.F.B. Waller on behalf of Defendant Esther Chinyere Okeiyi
*via cm/ecf*

Gregory McLawsen on behalf of Plaintiff Anoruo Asilonu
*via cm/ecf*

Valeria Cesanelli on behalf of Plaintiff Anoruo Asilonu
*via cm/ecf*